C. E. STEPHENSON, EXECUTOR, *etc.*

*v.*

EDWARD KUNTZ, *et al.*

(No. 9942)

AND

C. E. STEPHENSON, EXECUTOR, *etc.*

*v.*

EDWARD KUNTZ, *et al.*

(No. 9943)

Submitted April 14, 1948. Decided June 15, 1948.

*Eakle & Eakle* and *B. C. Eakle,* for other appellants.

*G. G. Duff, Breckinridge & Brown, John B. Breckinridge* and *B. P. Brown, Jr.,* for appellant.

*Wolverton & Callaghan* and *Brooks B. Callaghan, W. G. Brown,* and *Jno. T. Simms,* for appellees.

Fox, Judge:

On December 7, 1887, Madison Stephenson was the owner of approximately 500 acres of land, situated on Peters Creek, in Nicholas County, and by deed of that date conveyed same to Mary S. Stephenson. Inasmuch as the basic controversy in this cause depends upon the intent of the parties and the construction of said deed, the same is incorporated herein in its entirety, and reads as follows:

> "This Deed made this 7th day of December 1887, between Madison Stephenson and his wife Betsey Stephenson of the first part of the County of Clay and State of West Virginia and Mary S. Stephenson of the second part of the County of Nicholas and State of West Virginia: Witnesseth that the parties of the first part for and in consideration of the interest of the second party in her Father Estate William G. Fitzwater, deceased the receipt whereof is hereby acknowledged in full do grant bargain sell and convey unto the party of the second part all the land owned by the party of the first part in Nicholas County during her natural life and at her death to go to her son Van M. Stephenson and his heirs and in the event that Van M. Stephenson shall die without any heirs then the real estate herein conveyed shall go back to the surviving heirs of Madison Stephenson forever the land formerly owned by John G. Stephenson John A. Stephenson John D Stephenson and also an interest in 80 acres on Coopers Creek the said parties of the second part to have and to hold the said tracts or parcels of land for-

ever together with all the appurtenances thereto belonging and the said parties of the first part also hereby covenants with the party of the second part that they will warrant generally the title to the property hereby conveyed. Witness the following signatures and seals the day and year first above written.

MADISON STEPHENSON (SEAL)
BETSY STEPHENSON (SEAL)"

This deed was duly acknowledged before C. Pierson, a Notary Public of Clay County, and recorded in Nicholas County on November 4, 1891.

Following the execution of the said deed, on a date not known, but certainly prior to the death of Van M. Stephenson, Madison Stephenson died leaving surviving him William M. Stephenson, Mary Stephenson Elliott, Dora Callison, Phlista Dunford and John Stephenson, his children and heirs at law. Whether any of his children predeceased him leaving issue, the record does not disclose. On March 27, 1920, Mary S. Stephenson died leaving surviving her, her son, Van M. Stephenson, the same person as that named in the deed of December 7, 1887, aforesaid. On February 3, 1945, Van M. Stephenson died testate, but without issue or any descendants surviving him, John D. Stephenson, a son of said Van M. Stephenson, having died without issue on November 7, 1943.

The will of Van M. Stephenson was executed on January 10, 1936, and was probated in the office of the Clerk of the County Court of Nicholas County on February 6, 1945. By said will, the testator, after providing for the payment of his debts, and for a monument, bequeathed to his son, John D. Stephenson, then living, the sum of $1.00. He then made the following disposition of his estate by a residuary devise and bequest, which reads as follows:

\* \* \*

"I give, devise and bequeath to the trustees of the several churches of the Summersville Charge or Circuit of the Methodist Episcopal Church (North) all the balance and residue of my personal property of whatever kind and wherever

located. I direct my executor to sell all my tangible personal property and to collect all collectible debts owing to me and to divide money and bonds, if I own bonds at my death, among the several boards of trustees of the several churches of said Charge or Circuit as composed at my death so that each church shall share equally.

I give, devise and bequeath to the trustees of the same churches mentioned above a certain cemetery in Summersville District, Nicholas County, West Virginia, containing five-tenths (5-10) acres, more or less, which I own by virtue of the deed mentioned below.

I direct my executor to sell within reasonable time after my death, either as a whole or by parts as he may find best, all the balance and residue of my real estate, particularly two hundred forty-one (241) acres, more or less, in Summersville District, Nicholas County, West Virginia, which I own by virtue of a deed made by Madison Stephenson and Betsey Stephenson, his wife, to Mary S. Stephenson and Van Stephenson, dated December 7, 1887, and recorded in the office of the Clerk of the county court of Nicholas County in Deed Book 25 at page 296. Until such time as he may sell to advantage, he shall have the power to rent said real estate either as a whole or by parts and shall have the power to pay taxes and other necessary expenses for the benefit of said real estate from income derived from rental thereof. I give, devise and bequeath to the trustees of the churches mentioned above the proceeds of sale or sales of said real estate and the net income from rental after payment of taxes and other expenses as aforesaid and direct my executor to divide said money among the several boards of trustees of the several churches of said Charge or Circuit as composed at my death so that each church thereof shall share equally."

* * *

It will be noted that the real estate directed to be sold, and the proceeds thereof distributed, consisted of 241 acres. This is the same tract of land commonly referred to as 241.5 acres, and constituted the residue of the 500 acre tract conveyed by Madison Stephenson to Mary S.

Stephenson, by deed dated December 7, 1887. It appears that a part of said larger tract had been conveyed by Mary S. Stephenson or Van M. Stephenson in their lifetime. In the said will, the testator named C. E. Stephenson as the executor of his will and estate.

The property of which, as contended by the plaintiff, executor, his testator died seized and possessed, was appraised at $20,271.02. The tract of 241 acres of land mentioned in the will was appraised at $11,000.00; the tract of 1 acre adjoining at $25.00; tangible personal property at $330.50; cash found in residence and deposited in bank, $4,422.47; and government securities $4,493.75.

The executor named in the will, C. E. Stephenson, qualified as such, converted the tangible personal property into cash, paid the testator's debts, and made a settlement of his accounts before a commissioner of accounts. The said commissioner of accounts did not designate the beneficiaries of the testator's estate, but recommended the institution of a suit in equity to secure from a court of competent jurisdiction such designation, and for its general aid in the further administration of said estate. In this situation this suit followed.

This suit was instituted in the Circuit Court of Nicholas County in the name of C. E. Stephenson, executor of the estate of Van M. Stephenson, deceased, against Edward Kuntz and many others, as trustees of churches which would benefit under the will, aforesaid, and against those claiming to be heirs of Van M. Stephenson, as well as against those claiming as children, or descendants of children, of Madison Stephenson. Process issued against one hundred and thirty-eight people, and presumably all persons effected by this litigation are, by one form or another, before the Court. Some are brought into Court by order of publication, while apparently most were served with process in person. It is suggested that possibly all of the heirs of Van M. Stephenson were not made parties and therefore not before the court, but we have no way of evaluating that contention.

Plaintiff's bill, after pleading the appointment and qualification of the plaintiff as executor of the estate of his testator, his partial administration thereof, and the settlement of his accounts as executor before a commissioner of accounts, alleges that Van M. Stephenson died seized of a fee simple estate absolute in a tract of 241.5 acres of land, the residue of a larger tract conveyed to him by Madison Stephenson by deed dated December 7, 1887, and that the said Van M. Stephenson died on the 3rd day of February, 1945, possessed of certain personal property and said real estate, all located in Nicholas County; that the executor had converted the tangible personal property of the estate into money, had paid all debts, and had made settlement of his accounts as such before a commissioner of accounts; that the principal beneficiaries under the said will, as stated therein, were the trustees of the several churches of the Summersville Charge or Circuit of the Methodist Episcopal Church North, as constituted at the time of the death of the said Van M. Stephenson; that on January 10, 1936, the date of said will, the several churches of the Summersville Charge or Circuit of the Methodist Episcopal Church were Pierson, Simpson, Mt. Union, Mt. Vernon, Sparks, Gilboa, Summersville and Anthony's Chapel; that on or about the 10th day of May, 1939, the Methodist Episcopal Church and the Methodist Episcopal Church, South, by appropriate action, and by a declaration of union, merged and combined their organizations, and provided for succession of property; that, as a result of said merger and reorganization, the churches of the Summersville Charge or Circuit, as constituted on the 3rd day of February, 1945, the date of the death of the said Van M. Stephenson, were Jodie, Pierson, Simpson, Swiss, Tipton, Mt. Union, Mt. Vernon, Sparks, Arnette, Bethel, Dotson and Gilboa, of which Tipton and Dotson had, previously to the said union, been associated with the Methodist Episcopal Church, South; that as a result of said merger, a new charge or circuit was formed known as the Summersville-Muddlety Charge, formerly composed of the two Summersville Methodist Churches, and the two Muddlety

Methodist Churches, merging them into one church in Summersville and one at Muddlety, the former four churches having been previously affiliated with each of the two Methodist churches, aforesaid; that plaintiff was advised that since he was a fiduciary, he was, under the circumstances, entitled to aid and assistance and protection of the courts, by a construction of said will, and in particular a more specific designation of the church beneficiaries thereunder.

As stated above, the bill alleges that Van M. Stephenson died seized of a fee simple estate absolute in the tract of 241.5 acres of land, aforesaid, and proceeds argumentatively to deny that the provisions in the said deed, quoted at the beginning of this opinion, did less than vest in Van M. Stephenson a fee simple absolute estate in said land, subject only to the life estate of Mary S. Stephenson, provided for therein; and alleged long and continued possession and use of said land, the leasing of said land for oil and gas purposes, the sale of timber therefrom, and the conveyance of highway rights-of-way, all without objection or protest on the part of anyone.

The bill then takes cognizance of what is termed therein the purported claim of the heirs of Madison Stephenson to the said tract of 241.5 acres of land, under the provisions of the deed under which the plaintiff's testator claimed title thereto, being the deed of December 7, 1887, aforesaid; and avers that such claim of title, on the part of the said heirs of Madison Stephenson, constitutes a cloud upon his testator's title, aforesaid, which, as such executor, he was entitled to have removed. The bill then names those claiming an interest in said land as the heirs of Madison Stephenson, and alleged that said heirs had been made parties to the suit.

The bill then avers that Van M. Stephenson died without any living child or descendant of any child, and without any living father, mother, wife, brother or sister, or descendants of either, or any grandfather or grandmother; but that he left, as his heirs and next of kin, pa-

ternal and maternal uncles and aunts, brothers and sisters of his father, John D. Stephenson, and his mother, Mary Fitzwater Stephenson, and their descendants, and named the said heirs so far as their names could be secured and their residences asserted, and alleged that they had been made parties to the suit. An effort to reach by process any of the heirs of either Madison Stephenson or Van M. Stephenson, unknown to the plaintiff, was made by an order of publication duly awarded and posted according to Code, 56-3-23.

The prayer of the bill is:

> "That the plaintiff, being without remedy except in a court of equity, prays that the Court construe the will as aforesaid and designate more specifically the beneficiaries therein; that the Court construe the aforesaid deed and declare the aforesaid provision complained of to be null and void and to be held for naught and that any claim of any heir of the said Madison Stephenson thereunder be set aside as a cloud upon the title to said real estate; and that the plaintiff may have such other, further and general relief as to the Court may seem proper, and as in duty bound he will ever pray."

The defendants who claim title to the tract of 241.5 acres of land as children and the descendants of children, and as heirs at law, of Madison Stephenson, filed their joint and several demurrer and their joint answer to the plaintiff's bill. The demurrer is based solely upon the deed of December 7, 1887, aforesaid; and the answer is a general denial of the claim of plaintiff's testator to any estate in the tract of 241.5 acres, which survived his death, and which he could devise to any person, and alleged that, upon the death of Van M. Stephenson, the title to said tract of land became vested as a fee simple estate in the children of Madison Stephenson, who survived him, and in their descendants. The answer also sets up a claim of $3,000.00 against the personal estate of Van M. Stephenson, based upon the amount allegedly received by him in his lifetime from sales of timber from said land, and for highway rights-of-way through the same.

The defendants, Ima Young, Sally Young Thornton, jointly, and L. E. Young, separately, who claimed an interest in the said 241.5 acres, as heirs at law of Van M. Stephenson, assert their claim by answers filed on different dates. In these answers it is alleged that the estate of Van M. Stephenson, in the said tract of 241.5 acres of land, was a fee simple estate, and that it passed to his heirs upon his death, because the will of the said Van M. Stephenson, never became effective as to the devise and bequest to the trustees of the several churches named therein, since at the date of his death there was not in existence of the church organization or organizations to which his will refers, and that being true, the said Van M. Stephenson died intestate as to all of the property attempted to be devised and bequeathed to the Summersville Charge or Circuit of the Methodist Episcopal Church (North), and the property so attempted to be devised passed to his heirs under our statutes of descent and distribution.

Jennie Woods Callison and Mollie Woods Coiner, also claiming to be heirs at law of Van M. Stephenson, filed their joint and separate answer, in which they assert that the estate which the said Van M. Stephenson held in the 241.5 acres of land was a life estate, and that upon his death the fee simple estate therein passed to his heirs, and that his attempt to devise the same had no force nor effect, relying on the provisions of Code, 36-1-13, 14. To the same effect is the answer of Rebecca S. Comstock claiming an interest in said land as an heir at law of Van M. Stephenson. Each of these answers avers that, at the date of the death of Van M. Stephenson, there was not in existence such an organization as the Methodist Episcopal Church (North), or such an organization as the Summersville Charge or Circuit of the Methodist Episcopal Church, as the same existed when the aforesaid will was executed on January 10, 1936; and avers that, aside from the fact that the testator had no title to said land which he could transmit to others, by will or otherwise, there was no person or organization in existence, at the date of the death of the

said Van M. Stephenson, capable of taking under his will. Each of the answers of the Van M. Stephenson heirs seeks a recovery from his personal estate of the sum of $3,000.00 for timber and rights-of-way allegedly sold by said Van M. Stephenson prior to his death.

The several boards of trustees of the Summersville Circuit, and the Summersville-Muddlety Charge, of the Methodist Church, the churches of said circuit and charge, and the individual members of the said boards, filed their joint and several answer to the plaintiff's bill, maintaining that at the death of Van M. Stephenson, he was seized of an estate in fee simple absolute in the tract of 241.5 acres of land involved in this suit, and that his devise or bequest of the proceeds to be derived from the sale of the same to the several churches or circuit of the Methodist Episcopal Church (North) should be upheld for the benefit of the churches within the Summersville Circuit and the Summersville-Muddlety Charge of the Methodist Church, as constituted at the date of the death of Van M. Stephenson, by virtue of the union of the Methodist Episcopal Church, the Methodist Episcopal Church, South, and the Methodist Protestant Church, which under a declaration of union, dated May 10, 1939, united said churches under the name of the Methodist Church. The answer, in effect, admits the allegations of the bill respecting the absorption of the Summersville Circuit or Charge, as it existed on January 10, 1936, the date of the Van M. Stephenson will, into the Summersville Circuit and the Summersville-Muddlety Charge of the Methodist Church, through the unification of the three church organizations as stated above. The answer is supported by certified copies of the various records and proceedings showing the action of the several churches on the matters set up therein, and prays that the deed of December 7, 1887, aforesaid, be construed as vesting in Van M. Stephenson a fee simple estate in the land conveyed thereby, as of the date of the death of Mary S. Stephenson; that the claim of the heirs of Madison Stephenson be held for naught, and set aside as a cloud upon the title of the answering defendants, or the testator

aforesaid, to said· land; and that they be declared to be the true owners and beneficiaries of all of the property of the testator, Van M. Stephenson, according to the terms of his last will and testament.

On this state of the pleadings, the cause was submitted for final hearing. On November 22, 1946, the trial court entered its final decree in the cause, the important and decisive provisions of which read as follows:

* * *

"On consideration whereof the Court is of the opinion, and doth adjudge and decree, that according to the true construction of the deed of Madison Stephenson and wife to Mary S. Stephenson and Van M. Stephenson, dated December 7, 1887, and described in the bill and answers, the said Madison Stephenson and wife, after the termination of the life estate of Mary S. Stephenson, granted and conveyed by said deed to the said Van M. Stephenson in fee, simple, the 241.5 acres of land therein described; and the Court doth further adjudge and decree that the said Van M. Stephenson, the Testator, was, at the time of his death, seized and possessed, in fee simple, of all the said 241.5 acres of land, free of all claims whatsoever of the heirs of Madison Stephenson, deceased, and that the said Van M. Stephenson, the Testator, had the absolute right to dispose of said land by will or otherwise, the claims of title to said tract of land by the heirs of Madison Stephenson being null and void and of no effect.

The Court is further of the opinion to, and doth, find that the last will and testament of Van M. Stephenson, dated January 10, 1936, and fully described in the pleadings, is sufficiently clear and definite as to the beneficiaries of his bequest and is in all respects good and valid. It is, therefore, adjudged, ordered and decreed that after the payment of funeral expenses, debts, taxes, and administrative costs by the plaintiff, C. E. Stephenson, Executor, etc., all the rest and residue of the personal property, and the net proceeds from the sale of the real property of the estate of the Testator, Van M. Stephenson, now belongs to and is owned by the several Boards of Trustees of

the Methodist Church of the Summersville Circuit or Charge in Nicholas County, West Virginia; * * *"

Then followed an authorization and direction to the executor of the estate of Van M. Stephenson to make distribution in accordance with the decree.

The defendants claiming an interest in the tract of 241.5 acres of land, aforesaid, as heirs and children of Madison Stephenson, filed in this Court their petition praying for an appeal from and supersedeas to the final decree, aforesaid, on the basis of the contentions made by them in their demurrer and answer filed in the cause; and the defendants claiming an interest in said land as heirs of Van M. Stephenson, filed in this Court their separate petition, praying for a like appeal and supersedeas. On April 28, 1947, we granted the prayer of each of the said petitions, and the said appeals are now heard together.

The paramount question in this cause, so far as it affects the proceeds of the sale of the tract of 241.5 acres of land, aforesaid, is the construction to be given to the deed from Madison Stephenson to Mary S. Stephenson, dated December 7, 1887. Obviously, if the contention of the heirs of Madison Stephenson be upheld, the claims of the plaintiff, and those claiming an interest in said land by said deed, other than the heirs of Madison Stephenson, can have no validity; whereas, if such contention of the Madison Stephenson heirs be denied, we will then be called upon to decide: (1) whether under the said deed, and controlling statutes, Van M. Stephenson ever had more than a life estate in said land; or (2) if his estate therein was that of fee simple absolute ownership, which he could dispose of by deed or will, can the churches of the Summersville Circuit and the Summersville-Muddlety Charge of the Methodist Church take, as beneficiaries of said will, the bequest and devise made by the testator to the churches of the Summersville Circuit or Charge of the Methodist Episcopal Church (North), such organization no longer being in existence. It is clear, therefore, that we must first consider and construe the intent, mean-

ing and legal effect of the deed of December 7, 1887. Aside from the disposition of the proceeds of the sale of residue of the tract of land conveyed thereby, we will also be called upon to consider matters effecting the distribution of the personal estate of which the said Van M. Stephenson died possessed.

One of the fundamental rules to be followed, in construing a deed or will, is that a court will endeavor to carry into effect the intent of the parties thereto, seeking first to ascertain such intent from the instrument itself, but, where the same is ambiguous, permitting a resort to parol explanatory evidence of the circumstances in which the instrument was executed. The intention of the parties should always govern, unless the language employed makes it impossible to give effect thereto; and where the intent is apparent, and is not repugnant to some rule of law, it should prevail over mere technical terms. Ordinarily, words should be given their natural and usual meaning, and technical rules of construction will not be permitted to defeat the apparent intention of parties to an instrument. On this general subject see 3 Va. and W. Va. Digest 548; *Wootton* v. *Redd's Executor,* 12 Gratt 196; *Kesterson* v. *Brown,* 94 W. Va. 447, 119 S. E. 677; *Trager* v. *Chapman,* 100 W. Va. 413, 130 S. E. 660; *Schultz v. Carter* (Va.), 151 S. E. 130; *Thompson* v. *Smitley,* 108 W. Va. 463, 151 S. E. 435; 26 C. J. Sec. Deeds, Section 83; 16 Am. Jur. 531.

Another rule, equally fundamental, is that an effort should be made to give effect to every part of an instrument, and, where possible, to every word thereof, to the end that the same shall be interpreted as a whole, and not merely by a consideration of disjointed or disconnected parts thereof. This rule is supported by 3 Va. and W. Va. Digest, 553, and cases cited therein. 26 C. J. S. Deeds, Section 84; 17 *Id.* Contracts, Page 707, Sec. 297; 16 Am. Jur. 534; *Uhl* v. *Ohio River Railroad Company,* 51 W. Va. 106, 41 S. E. 340; *Realty Securities and Discount Co.* v. *National Rubber and Leather Co.,* 122 W. Va. 21, 7 S. E. 2d. 49; *United Fuel Gas Co.* v. *Moles,* 122 W. Va. 577,

11 S. E. 2d. 369; *Wheeling Dollar Savings and Trust Co.* v. *Stewart,* 128 W. Va. 703-9, 37 S. E. 2d. 563; *Hinton* v. *Milburn,* 23 W. Va. 166; *Kello* v. *Kello's Executors* (Va.), 103 S. E. 633; *Graham* v. *Graham,* 23 W. Va. 36; *Bently* v. *Ash,* 59 W. Va. 641, 53 S. E. 636.

With these principles in mind, we reach the construction and interpretation of the deed from Madison Stephenson and wife to Mary S. Stephenson, dated December 7, 1887. It appears from the pleadings in this cause that, immediately prior to said date, Madison Stephenson was the owner of approximately 500 acres of land in Nicholas County, and that Mary S. Stephenson was then entitled to an interest in the estate of her deceased father; that the said Mary S. Stephenson was the wife of John B. Stephenson, a brother of the said Madison Stephenson; that in consideration of Mary S. Stephenson's interest in her father's estate, the said Madison Stephenson conveyed to her the land he owned in Nicholas County. There is nothing in the record disclosing the value of the interest of Mary S. Stephenson in her father's estate, or that of the land conveyed to her by Madison Stephenson. Whether Madison Stephenson received full consideration for the conveyance he made is not shown, nor is it important. It is sufficient that there was a stated consideration acknowledged which sustained the deed so executed at that time.

The said deed has been copied in its entirety into this opinion. The grantor, Madison Stephenson, granted, bargained, sold and conveyed unto Mary S. Stephenson all the land owned by him, which was situated in Nicholas County "during her natural life and at her death to go to her son Van M. Stephenson and his heirs and in the event that Van M. Stephenson shall die without any heirs, then the real estate herein conveyed shall go back to the surviving heirs of Madison Stephenson forever". There is no question raised as to the estate taken by Mary S. Stephenson under said deed. She took a life estate. There can be no question, in our opinion, that the intent of the parties was that on her death the land conveyed should go to Van M. Stephenson, and to effect such intent

there was used the language "and at her death to go to her son, Van M. Stephenson, and his heirs". If the granting clause had ended there, it would have vested in Van M. Stephenson an estate in fee simple absolute. But the granting clause did not end there. It provided that "and in the event that Van M. Stephenson shall die without any heirs, then the real estate herein conveyed shall go back to the surviving heirs of Madison Stephenson forever". We can not ignore any of this language. The language last quoted is entitled to as much consideration as any other part of the granting clause. The language employed in that clause of the deed must be considered as a whole. It must have been within the contemplation of the parties to the deed that at some time, and in some circumstances, the estate conveyed would go back or revert to the surviving heirs of Madison Stephenson, and appropriate language was used to carry out that apparent purpose, to which we must endeavor to give some effect.

The difficulty arises over the construction of the phrase "in the event that Van M. Stephenson shall die without any heirs". As we view the matter, it can scarcely be conceived that it was contemplated, at the date of the execution of this deed, that Van M. Stephenson would die without heirs, if we use the word "heirs" in its technical sense. Of course, it is possible for any person to die without heirs, but the record discloses that at that time Van M. Stephenson had a father and mother, and uncles and aunts on both the paternal and maternal sides of his family and more than one hundred of his heirs are made parties to this suit, and many of them, or their ancestors, were, necessarily, living at the date of the said deed. This gives rise to the contention, on the part of Madison Stephenson's heirs, that the word "heirs", as used in the phrase last quoted above, was intended to mean "child or children", and that the disputed clause should be construed to read "and in the event that Van M. Stephenson shall die without any *child or children* then the real estate herein conveyed shall go back to the surviving *children* of Madison Stephenson forever", and that the said Van M. Stephenson, having died without any surviving child

or children, the entire granting clause of the deed can be made effective as to the parties intended to take thereunder.

We are of the opinion that this is the proper construction to be given this deed. It is inconceivable to us that the parties can be held to have intended that the deed should have any other meaning or effect. Evidently something was meant by the language he used, providing that in a stated contingency the estate should go back to the grantor's surviving heirs, which we think meant "children". Men do not use that definite type of language without having some fixed purpose in mind. The language is simple and unambiguous, and we can not ignore it. We must, if possible, give to it some effect. If we hold that the word "heirs" was used in its technical sense, then we cannot, with any degree of plausibility give to the language following any effect whatever, because the very people to whom the land was to revert, in the case of the death of Van M. Stephenson, without child or children, would be his collateral heirs, and thus defeat the reversion. Giving the word "heirs" its technical construction, all the language which followed the use of that word in the connection indicated, would be thoroughly meaningless and ineffective. We can not give a written instrument that construction, where there is a reasonable basis for a different construction under which the deed as a whole can be made effective.

There is ample authority for our holding, that in the circumstance of this case, as disclosed by the deed itself, and as aided by allegations and admissions of parties, appearing in the pleadings of the cause, the word "heirs" used in the phrase "in the event that Van M. Stephenson shall die without any heirs" was intended to mean "child or children". One of the first cases bearing on this question is *Norris* v. *Johnston*, 17 Gratt. 8, where it was held: "Testator had twelve children, six unmarried daughters. He directed his estate to be divided into twelve parts, and gave a part to each child. He then says: 'It is my will and desire that if any of my children die without heirs,

for their part to be equally divided amongst all of my children then living'. Held: This is a good executory bequest in favor of the children surviving one dying without issue". In *Hinton* v. *Milburn, Supra,* the testator had provided that his estate should be used for the comfortable support and education of a natural daughter, and the will provided: "should she die without heirs, any of my estate that may be left after supporting Tony (a slave), I desire to be equally divided between my brothers and sisters" and it was held that the word "heirs" used in that clause of the will meant "children" or "issue of body". See also *Roberson* v. *Wampler* (Va.), 51 S. E. 835; *Driskill* v. *Carwile* (Va.), 133 S. E. 773; *Massengill* v. *Abell* (N. C.), 134 S. E. 641; *Tiffany* v. *Thomas* (Va.), 190 S. E. 101; *Everitt* v. *La Speyre* (Ga.), 24 S. E. 2d. 381; *Black* v. *Jones* (Ill.), 106 N. E. 462; *Lee* v. *Roberson* (Ill.), 130 N. E. 774. In the case last cited, it was held: "Clause of a will providing that, if testator's son, naming him, should die without heirs, the estate willed to him should be equally divided with testator's living heirs, *held* to have meant by the word 'heirs', and the words 'living heirs' descendants and living descendants; testator not having intended to include the son within the designation 'my living heirs' meaning descendants living at the death of the son", and also "under a will devising to testator's son certain farms, etc., providing that, if the son died without heirs, the estate should be equally divided with testator's living heirs, the son took a base or determinable fee, which would have endured for all time had he died leaving descendants, but, the condition on which the estate was to become a fee simple absolute never having happened, title passed under the executory devise to testator's daughters and other descendants of testator living at the death of the son, who took *per stirpes* on such death".

The authorities so far cited and discussed come mainly from this State and Virginia. The following general authorities sustain our position: *Bundy* v. *Bundy,* 38 N. Y. 410; *Rish* v. *Wingard* (S. C.), 89 S. E. 400; *Pugh* v. *Allen*

(N. C.), 102 S. E. 394; *Boshell* v. *Boshell* (Ala.), 118 So. 553; *Brown* v. *Tuschott* (Mo.), 138 S. W. 497.

It may be said that our holding runs counter to the general rule and presumption that the word "heirs" is ordinarily used in its technical sense. We agree that this is the rule, but the presumption may be repelled by a plain implication of intention to use it in a different sense. Many cases can be found which hold that the word "heirs" should be construed as being used in its technical sense; but equally as many can be found which hold that where, from the contents of the deed or will, it clearly appears that the grantor or testator intended to use the word in a different sense, such intent should be made effective. Authorities could be cited on both sides of this proposition, but it is not deemed to be necessary. In our opinion, considering in its entirety the deed in question, it was the clear intent of the parties thereto to use the word "heirs" in its nontechnical sense.

The deed of December 7, 1887, provides that under certain conditions the real estate conveyed thereby should "go back to the surviving heirs of Madison Stephenson forever". We are of the opinion that this should be construed as intended to mean the surviving "children" of Madison Stephenson at the date of his death, and, of course, that any of such children still surviving, or the descendants of the children surviving on that date, are now entitled to take title to the 241.5 acres of land in question. We think the following cases support this theory: *Hansford* v. *Elliott*, 9 Leigh 79; *Stone's Ex'r.* v. *Nicholson*, 27 Gratt. 1; *Brown* v. *Brown*, 31 Gratt. 502; *Stone* v. *Lewis* (Va.), 5 S. E. 282; *Jameson* v. *Major's Adm'r.* (Va.), 9 S. E. 480; *Gish* v. *Moomaw* (Va.), 15 S. E. 868; *Crew's Adm'r.* v. *Hatcher* (Va.), 21 S. E. 811; *Stanley* v. *Stanley* (Va.), 24 S. E. 229; *Cheatham* v. *Gower* (Va.), 26 S. E. 853.

At this point, on account of other questions arising in the cause, it seems necessary to determine the character of the estate which Van M. Stephenson took under the deed of December 7, 1887. We have held that but for the

use of the words following the word "heirs" used in connection with the phrase "in the event that Van M. Stephenson shall die without any heirs", the said Van M. Stephenson would have taken an estate in fee simple absolute, but that the use of the words which immediately followed prevented the deed from having that effect. In our opinion, considering the deed as a whole, Van M. Stephenson took what may be termed a base, defeasible, determinable, or qualified fee. There can be no question but that under modern authorities the grant of a fee may be so limited. In 19 Am. Jur. 572, it states:

> "For a long time it has been well settled both in England and in this country that a fee may be limited after a fee by a conveyance operating under the Statute of Uses or by way of an executory devise, provided the contingency operating to defeat the estate of the first taker is not violative of the rule against perpetuities. The common-law doctrine of repugnancy between the two estates, which was perfectly rational on the assumption on which it proceeded, has given way to the more just and reasonable view, which regards the prior gift, although made in words which, standing alone, import an absolute estate, as restrained by the subsequent limitation and as conferring an estate subject to be cut off by the happening of a stated event. Such estate is, technically and properly, a defeasible fee simple, because it is liable to be cut off, but it is none the less a fee simple. The decisions of a few of the courts have gone further and have stated that this prior estate, although properly denominated a 'fee', because it may last forever, is nevertheless a base or determinable fee, because it is liable to be defeated by the happening of the contingency on which it is limited. In other words, in such a case, as the limitation is construed, an absolute fee is not given to the first taker; he takes only a qualified or determinable one."

That such a limitation can be made, see *McKown* v. *McKown,* 93 W. Va. 689, 117 S. E. 557; *Kidwell* v. *Rogers,* 103 W. Va. 272, 137 S. E. 5.

Our decision on the construction of the deed of December 7, 1887, by which we hold that the surviving children of Madison Stephenson, and their descendants, are entitled to be decreed an estate in fee simple in the tract of 241.5 acres of land, would seem to preclude any consideration of the contentions made by the heirs at law of Van M. Stephenson in respect to said land. Undoubtedly, Van M. Stephenson left heirs, and two and different contentions are made by his heirs, or those of them who filed answers in this cause. Three of said heirs contend in their answer that said Van M. Stephenson took a fee simple absolute estate in said land, on the death of his mother, Mary S. Stephenson; while others of his heirs, whose answers are filed, contend that he only took a life estate, and all contend that, whatever his estate, the devise or bequest to the Summersville Circuit or Charge was ineffective, because, at the date of his death, the church organization named in his will was not in existence, and there was, therefore, no person nor organization in position to take under the will. As we understand these answers, the first position is based upon the theory that no consideration should be given to the clause of the deed of December 7, 1887, which we hold has now vested title to land in question in the heirs of Madison Stephenson; and that without such consideration, the said deed vested in Mary S. Stephenson an estate for her life, and on her death the land passed to Van M. Stephenson and his heirs, vesting in Van M. Stephenson a fee simple estate therein. The other position taken is apparently based upon Sections 10 and 11, Chapter 71 of the Code of 1923, which, so far as we can ascertain, was the statute in force and effect at the date of the conveyance of December 7, 1887. Those sections first appeared in Chapter 116 of the Virginia Code of 1849. They appeared in the corresponding chapter of the Virginia Code of 1860 and in Chapter 71 of our Code of 1868, wherein they appear as follows: "10. Every limitation in any deed or will contingent upon the dying of any person without heirs, or heirs of the body, or issue, or issue of the body, or children, or offspring, or descendant, or other relative, shall

be construed a limitation, to take effect when such person shall die, not having such heir, or issue, or child, or offspring, or descendant, or other relative, as the case may be, living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise plainly declared on the face of the deed or will creating it", and "11. Where any estate, real or personal, is given by deed or will to any person for his life, and after his death to his heirs, or to the heirs of his body, the conveyance shall be construed to vest an estate for life only in such person, and a remainder in fee simple in his heirs or the heirs of his body." The last section quoted is generally understood to be an attempt to modify or abolish what is known as the common law rule in Shelley's Case. But it has been held that this statute, being in derogation of the common law, is limited in its operation to cases falling within its terms, under the rule of strict construction. *Carter* v. *Reserve Gas Co.,* 84 W. Va. 741, 100 S. E. 738. Code 36-1-14 abolishes the rule in Shelley's Case in its entirety, but that statute did not come into effect until January 1, 1931, and is not here applicable.

The rule in Shelley's Case was that "wherever the ancestor, by any gift or conveyance, takes an estate of freehold in lands or tenements, and in the same gift or conveyance, an estate is afterwards limited by way of remainder, either mediately or immediately to his heirs, or to the heirs of his body, the words 'heirs' or 'heirs of the body' are words of limitation of the estate, carrying the inheritance to the ancestor, and not words of purchase, creating a contingent remainder in the heirs". 2 Minor Institutes 341; *King* v. *Johnson* (Va.), 83 S. E. 1070; *Turner* v. *Monteiro* (Va.), 103 S. E. 572; *Chipps* v. *Hall,* 23 W. Va. 504. It is apparent that if we give a strict construction to Section 11, Chapter 71 of the Code of 1923, quoted above, the heirs of Van M. Stephenson could in no event take thereunder. That section covers the case where property is given to a person for his life, and after his death to his heirs. In the case at bar, the property was conveyed to Mary S. Stephenson for her natural life,

with the provision that at her death it should go to her son, Van M. Stephenson, and his heirs, in no wise limiting the estate of Van M. Stephenson to an estate for life, and this, but for the words which followed, would have vested in the said Van M. Stephenson an estate in fee simple. Section 10 of Chapter 71, Code of 1923, merely provides that the limitation in a deed based upon the contingency of some person dying, shall be construed as a limitation to take effect when such person shall die, and, as held in *Daniel* v. *Lipscomb* (Va.), 66 S. E. 850, was intended to avoid the rule against perpetuities, by making the estate vest at a date when such rule could not be invoked. We see no merit in the contention of the heirs of Van M. Stephenson, based upon any construction of the statutes attempting to abolish the rule in Shelley's Case. We realize that our discussion on this point of the case is unnecessary, and possibly improper; but we have so discussed it out of deference to able counsel who, on this point, have vigorously asserted their rights to an interest in the land involved in this suit.

Having held that the surviving children of Madison Stephenson and their descendants are entitled to a fee simple estate in the tract of 241.5 acres of land, it is apparent that the will of Van M. Stephenson, insofar as it tends to devise said land to his executor, and to bequeath the proceeds of its sale to the Methodist Episcopal Church (North), as attempted therein, can have no force or effect. But the record shows that Van M. Stephenson died possessed of personal property, of the approximate value of $9,000.00, and this presents the further question of whether his will should be construed as passing to the Methodist Churches in the vicinity of Summersville that which the testator intended to be paid to the churches of the Summersville Circuit or Charge of the Methodist Episcopal Church (North). There is no dispute as to the facts connected with the unification of the three Methodist Churches, by the Declaration of Union, made in the year 1939, after the date of the will of Van M. Stephenson, and before his death. At the date of the death of Van M. Stephenson, the Methodist Episcopal Church was no

longer in existence. That church, along with the Methodist Episcopal Church, South, and the Methodist Protestant Church, had been merged into one church under the name of the Methodist Church. There was some rearrangement of the churches in the vicinity of Summersville in Nicholas County. In some instances two churches were merged, as at Summersville and Muddlety, into one church at each point. Additional churches were taken into what is now the Summersville Circuit or Charge, and the Summersville-Muddlety Charge. All this is set up in the plaintiff's bill and the answer of the trustees. The situation is changed to some extent, and to the churches of the Summersville Circuit or Charge, intended to be benefited through the testator's will, there has been added churches not originally contemplated as participating in his intended bounty. We have given this question mature consideration, and have reached the conclusion that the beneficient purpose of Van M. Stephenson to devote the bulk of his estate to the use of the Methodist Church of his choice, should not be permitted to fail because, as a part of the policy of that church, as it existed at the date of his will, it was deemed advisable to merge the same with others, and thereby to change, in what we consider non-essential details, the use of the fund bequeathed by his will to his own church then in existence. The Declaration of Union, and the proceedings which preceded that Declaration, contemplated that the church, growing out of the merger, the Methodist Church, should enjoy the benefits of the property of all of the churches entering into said merger, and the benefits of any bequests or devises made to either under wills which had not become effective by the death of the donor. For us to hold that this act of union had the effect of nullifying the bequest made to one of the churches, in the circumstances disclosed by this record, would, in our opinion, be an unwarranted interference with the plan and purpose of the testator, and unjust to the churches he had in mind to aid. The money which Van M. Stephenson intended to give to the churches of his home county will still be used for the various churches he had

in mind to aid, and the fact of their merger with other churches in the same community, constituting the Methodist Church, should not prevent his bequest from taking effect. We are of the opinion, therefore, that as to the personal estate of which Van M. Stephenson died possessed, after the payment of debts, and after providing a reasonable sum for a monument, the same should pass to the churches of the Summersville-Muddlety Charge as decreed by the lower court.

The answer of the heirs of Madison Stephenson asserts a claim against the personal estate of Van M. Stephenson for $3,000.00, covering amounts allegedly received by Van M. Stephenson from the sale of timber from, and the conveyance of highway rights-of-way through, the 241.5 acres of land. It is alleged in said answer, that Van M. Stephenson received $1,000.00 from one J. O. Lloyd, and the same amount from the Ely-Thomas Lumber Company, for certain lots of timber, standing and located on said land, and the same amount from the County Court of Nicholas County for rights-of-way for State Route 19, passing through the same; and that the said sales constituted waste, for which the present owners of the said land are now entitled to a recovery in this suit from the estate of the said Van M. Stephenson.

We have examined the cases of *McGlamery* v. *Jackson,* 67 W. Va. 417, 68 S. E. 105; *Jordan* v. *City of Benwood,* 42 W. Va. 312, 26 S. E. 266; *Allen* v. *DeGroot* (Mo.) 14 Am. St. Rep. 626; *Fleenor* v. *Sproles* (Va.), 139 S. E. 286; and *Scott* v. *Wharton,* 2 H. & M. 25, all cited by counsel for the Madison Stephenson heirs. As we read these cases, they all apply to cases of life tenancy, where there is a vested remainder or a definite reversion. *University* v. *Tucker,* 31 W. Va. 621, 8 S. E. 410, holds that: "A contingent remainder-man may maintain an injunction to restrain waste by the life-tenant." In *Talbott* v. *Southern Oil Company,* 60 W. Va. 423, 55 S. E. 1009, it is stated in the opinion that: "Waste, injury to the freehold by a tenant for life or years, is actionable at common law, whether it result from affirmative wrongful acts, or mere

omission to perform duty." But in 56 Am. Jur. 459, it is stated: "It is well settled that one entitled to a contingent remainder cannot maintain an action at law against the tenant in possession to recover damages for waste, for the reason that it cannot be known in advance of the happening of the contingency whether the contingent remainderman would suffer damage or loss by the waste; and if the estate never became vested in him, he would be paid for that which he had not lost." Some of the authorities indicate that even a contingent remainderman may enjoin what is known as equitable waste, and equitable waste has been denfied as: "A form of waste recognized by courts of chancery, usually defined as consisting in such acts as at law would not be deemed to be waste under the circumstances of the case, but which, in the view of a court of equity, are so regarded from their manifest injury to the inheritance, although they are not inconsistent with the legal rights of the party committing them. * * * Among the instances of equitable waste the following may be stated: where a mortgagor in possession fells timber on the estate and thereby renders the security insufficient; where a tenant for life, without impeachment of waste, pulls down houses, or does other waste wantonly and maliciously; and where tenants for life without impeachment of waste, or tenants in tail, after possibility of issue extinct, commit acts in destruction of the estate, or cut down trees planted for the ornament and shelter of the premises." 56 Am. Jur. 453. As an abstract proposition, the cutting of timber, beyond that necessary to a reasonable enjoyment of the premises by a life tenant, constitutes waste; but it may be doubtful whether the sale of a right-of-way by a life tenant would be held to constitute waste, because the purchaser of the right-of-way got nothing beyond the life tenant's interest in the property, and would probably be liable to the true owner of the property for any damage done thereto by the continued or future use of the right-of-way.

The observations made above cover the case of where there is a life tenant in possession, and the person who takes the property as remainderman or reversioner seeks

to recover for waste committed by the life tenant. The case at bar is not, according to our ruling herein, a case of a life tenancy. Van M. Stephenson held an estate in fee simple, subject to a condition by which his estate might be defeated; in other words, he held a defeasible base or qualified fee. In 27 R. C. L. 1037, it is stated that: "The general rule is that the owner of a defeasible fee is not chargeable for waste within the general acceptation and meaning of the term, but a court of equity will sometimes restrain him from committing equitable waste." In *Landers* v. *Landers* (Ky.), 151 S. W. 386; American and English Ann. Cases, Vol. 35, 1915A, 223, it is held that: "The owner of a defeasible fee is not chargeable with waste, although equity will sometimes restrain him from committing equitable waste", and, "the proprietor of a qualified or base fee has the same rights and privileges till the contingency upon which it is limited occurs as if he were tenant in fee simple." In a note following that case it is stated that: "the general rule announced in the reported case that the owner of a defeasible fee is not chargeable for waste within the general acceptation and meaning of that term is supported by practically all of the cases wherein the question has been raised", and many cases are cited to support the statement. In the same note it is stated that: "some cases have recognized an exception to the general rule in that a court of equity will sometimes restrain equitable waste by the owner of a defeasible fee."

The question of whether Van M. Stephenson committed waste while he was in possession of the tract of 241.5 acres of land, and if so whether his estate can be made liable therefor, was not passed upon by the court below. That court being of the opinion that Van M. Stephenson, after the death of Mary S. Stephenson, was the owner of a fee simple absolute estate in said land, it followed that, as to said land, he could not commit waste. Our holding, on the question of title, being to the contrary, the contention that waste was committed, and that recovery may be had from the estate of Van M. Stephenson, now fairly arises upon the record of the cause. However, this Court has

followed the rule that questions which have not been passed upon by the court below, will not be first considered here. We have referred to the authorities on the question, not as indicating our view, but as an aid to counsel and the court below. We are of the opinion that we ought not to decide this particular question until there has been a full hearing thereon in the Circuit Court of Nicholas County, and a decision thereon by that court. We will, therefore, remand the cause to said court, with directions to afford parties a full hearing upon the question of whether or not waste was committed by Van M. Stephenson, and if so whether his estate, in the hands of his executor, may be made liable therefor.

We, therefore, reverse the decree of the Circuit Court of Nicholas County, insofar as it denied to the children or heirs of Madison Stephenson a fee simple absolute estate in the tract of 241.5 acres of land; we affirm said decree, insofar as it denies to the heirs of Van M. Stephenson any interest in his estate, real or personal; and we affirm the said decree insofar as it holds that the subordinate organizations of the Methodist Church, succeeding those referred to in the will of Van M. Stephenson, and those mentioned in the answer of the trustees of the churches aforesaid, filed in the cause, are entitled to the entire personal estate of the said Van M. Stephenson, after the payment of his debts, and after providing for a reasonable sum for a monument at his grave. We remand the cause to the Circuit Court of Nicholas County for a hearing upon the question of waste raised in the cause, and for the entry of such orders and decrees as may be necessary to make our decision effective.

*Affirmed in part; reversed in part; cause remanded.*